**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MELVIN HICKS,** ) | |
|     **ID # 1240838** ) | |
|         **Petitioner,** ) | |
| **vs.** ) | **No. 3:08-CV-033-M (BH)** |
| ) | |
| **NATHANIEL QUARTERMAN, Director,** ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
|         **Respondent.** ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a April 19, 2004 conviction for aggravated assault with a deadly weapon in Cause No. F03-71347-IJ. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A. Factual and Procedural History**

On March 3, 2003, the State indicted petitioner for aggravated assault with a deadly weapon, enhanced by two prior felony convictions. (Transcript at 2). Petitioner made an open plea of guilty to the trial court to the charged offense and pled true to one enhancement paragraph on April 19, 2004. The trial court accepted the plea, and after hearing evidence at a punishment hearing held on May 28, 2004, sentenced petitioner to a fifteen-year sentence. (R. 2:4-7; R. 3:40-41).

The complainant testified at the punishment hearing that she used to date petitioner while

they worked together at a local restaurant, and that they stopped dating on September 9, 2002. (R. 3:5-6).  After they broke up, petitioner stalked her to the extent that she would notify her neighbors each day when she left home to walk to work at the restaurant. On February 2, 2003, after informing her neighbors as usual, the complainant walked across a nearby field towards the restaurant and was trying to enter the back gate when petitioner confronted her, accused her of having an affair with her downstairs neighbor, and tried to pull her into an alley to "give me some." (R. 3:7-8).  She escaped and ran away from petitioner when he tripped on a curb, but he caught up to her, pushed her up to a fence, stuck a knife to her neck, and stated that he "ought" to kill her.  Petitioner finally let her go after she told him that the employees of the restaurant were going to come looking for her because she was not there. (R. 3:8-9, 14).  The complainant then went to the restaurant and called the police, and they came and made a report.  Since petitioner had been jailed on this charge, he had written her several letters stating that he loved her and wanted to be with her. (R. 3:9).  On cross-examination, she acknowledged that she had previously been convicted of aggravated assault of an elderly person, that she was on probation when this incident occurred, and that her probation for that offense was at one point revoked.  (R. 3:12-13, 20).  She also acknowledged that she had a crack cocaine problem at the time she was dating petitioner, but she denied ever telling him that she would "take care of him" if he crossed her because he had a criminal record. (R. 3:18-19).

      Petitioner's nephew testified that he knew the complainant when she dated his uncle, that he was a drug dealer then, and that he sold her crack cocaine regularly for a couple of months until he was arrested.  He never saw bruises on her or any indication that she was abused, and she never acted like she was afraid of petitioner.  To his knowledge, petitioner was not a drug user. (R. 3:21-25).

Petitioner's ex-girlfriend testified that she worked for DISD as a food technician and that she had dated petitioner for three or four years before he dated the complainant. Petitioner was never violent towards her, they never fought, and they attended church together. They broke up because of other women but remained friends. The aggravated assault for which petitioner went to prison involved a fight between petitioner and her brother when her brother had been drinking, and the two men remained friends. (R. 3:27-34). On cross-examination, she testified that she was unaware that petitioner had been convicted of a domestic violence assault in 1995 but had heard that he went to prison for an aggravated assault and attempted murder in the 1980s. (R. 3:35-36).

Petitioner's attorney proffered evidence that if petitioner were called to testify, he would testify that the complaining witness had on numerous occasions stated that she would get even with him by charging him with assault. (R. 3:37).

The Fifth District Court of Appeals affirmed petitioner's conviction and sentence in an unpublished memorandum opinion. *Hicks v. State*, 05-04-00835-CR (Tex. App.–Dallas Jan. 27, 2005, pet. ref'd). On January 26, 2006, petitioner filed a state application for writ of habeas corpus in which he raised most of the same issues he raises in his federal petition (State Habeas Transcript:7-8). On August 22, 2007, the Court of Criminal Appeals denied petitioner's state applications without written order on the findings of the trial court without a hearing. *Id*. at cover.

**B. <u>Substantive Issues</u>**

On January 3, 2008, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed an answer asserting that petitioner's federal petition is partially

3

unexhausted and without merit on May 29, 2008, (*see* Answer), and provided the state court records.

Petitioner asserts that: (1) his plea of guilty was unlawfully induced and involuntary; (2) his conviction was obtained by the use of a coerced confession; (3) the prosecution failed to disclose exculpatory evidence to the defense; and (4) his trial attorney provided ineffective assistance of counsel. (Pet. at 7). Respondent contends that petitioner has failed to exhaust a portion of his involuntary plea claim and a portion of his ineffective assistance of counsel claim at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89

4

(Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. VOLUNTARINESS OF PLEA

In his first ground for relief, petitioner asserts, in essence, that his guilty plea was involuntary. Specifically, petitioner asserts that his guilty plea was involuntary because: 1) his trial attorney only met with him four times; 2) he pled guilty because his attorney led him to believe that, if he went to trial, a jury would find him guilty and sentence him to between twenty-five to ninety-nine years or life whereas he would receive probation or a minimum sentence if he pled guilty; 3) petitioner is innocent; 4) trial counsel never discussed with or explained to him the facts of the charge, the benefits and drawbacks of entering a plea of guilty, what an open plea of guilty meant, his entitlement to discovery, and the papers he signed.[1]

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Therefore, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v.*

---

[1] Notwithstanding respondent's contention that this claim is partially unexhausted, the claim is more easily resolved on the merits, so the Court bypasses the procedural issue. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits despite lack of exhaustion); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

6

*Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation

7

(including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

At the state habeas level, petitioner's trial attorney submitted an affidavit. It states that she spoke to petitioner on many occasions by telephone and in person during each of the twelve times that his case was set on the court's docket. She explained the nature and consequences of an open plea, told him he was eligible for deferred adjudication, and gave her professional opinion based on his extensive violent criminal history and her investigation of the case that taking the case to a jury would be a mistake. Nevertheless, counsel told petitioner that she would take his case to trial if he wanted. While the witnesses were present for trial and the jury panel was waiting in the hallway, she obtained an agreement from the prosecutor to drop one of the enhancement paragraphs in exchange for petitioner making an open plea, and she recommended that petitioner take this option. (S.H.Tr.:81-2). The affidavit was found to be true and correct by the trial court in its findings at the state habeas level. The court also found that counsel consulted with petitioner on numerous occasions, fully discussed all matters involving the guilty plea, and fully explained the paperwork to petitioner. The trial court further found that counsel fully prepared for trial and obtained a favorable plea bargain for petitioner. (S.H.Tr.:77-79). This claim was denied on its merits based on the findings of the trial court.

This denial is not contrary to federal law. The record reflects that, during the plea hearing and

8

after the trial judge granted the State's motion to strike the second enhancement paragraph of the indictment, petitioner answered affirmatively that he wished to give up his right to a jury trial and his right to call and cross-examine witnesses and enter a guilty plea and a plea of true to the remaining enhancement paragraph. (R. 2:3-4). Petitioner also answered affirmatively that he understood that if the trial judge found him guilty and the enhancement paragraph true, he could set petitioner's punishment at anywhere within the range provided by law. (R. 2:4). When specifically asked by the trial judge if he reviewed the plea agreement with his attorney and if he understood it when he signed it, petitioner answered "yes." (R. 2:4). The trial judge then went on to explain that an open plea meant that petitioner was leaving the question as to what his punishment should be with the court, and petitioner answered affirmatively that he understood this. (R. 2:4-5). Petitioner also answered affirmatively that he understood that if he were sentenced to time in the penitentiary, either at the sentencing hearing or because he was placed on deferred adjudication that was later revoked, he would have to serve half of his sentence before being eligible for parole. (R. 2:5). The trial judge then asked petitioner directly whether he had any questions, and he stated "no, sir." Petitioner answered "yes" when the trial judge asked him whether he understood it all. (R. 2:5). After the plea agreement and the judicial confession were entered as exhibits by the State, the trial judge showed both documents to petitioner on the record and asked him if he understood the documents when he signed them, and petitioner stated "yes." (R. 2:6-7). The trial court then accepted petitioner's plea of guilty and plea of true. (R. 2:8).

　　　Petitioner also signed a judicial confession to the charged offense as well as the enhancement paragraph, and it was admitted into evidence at the plea hearing. (Tr.:63; R. 2:6). In the plea agreement, also admitted into evidence, petitioner pled true to the enhancement paragraph and pled

9

guilty to the charged offense, and he was admonished about the consequences of his guilty plea and plea of true. (Tr.:61-2; R. 2:6). The plea agreement admonished petitioner that the sentence range for the offense, enhanced by one enhancement paragraph, was 5-99 years or life. It also states, immediately above petitioner's signature, that his plea of guilty and waiver of rights were knowingly, freely, and voluntarily made, and that his attorney had explained to him and he understood the admonitions and warnings contained in the plea agreement. (Tr.:62).

Petitioner has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity"). Petitioner has also failed to present clear and convincing evidence that the state habeas findings should not be presumed correct. The record does not support petitioner's assertions that his plea was involuntary because his attorney did not meet with him enough or because counsel misled him about possible sentences or because counsel never discussed the case with him, never explained the repercussions of pleading guilty, never explained an open plea, and never explained the documents he signed to him. Counsel spoke to petitioner numerous times, explained the plea agreement to him and the papers he signed, and gave her professional advice that he would receive a shorter sentence if he pled guilty rather than take the case to trial. Guilty pleas are not rendered involuntary because a defendant pleads guilty out of a desire to limit the possible penalty after being advised by competent counsel that a plea would be to the defendant's advantage. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Moreover, the record reveals that the trial judge explained an open plea to petitioner and questioned him about his understanding of the documents he signed.

Indeed, under Texas law, the sentence range for a person adjudged guilty of a second degree felony is 2 to 20 years imprisonment. TEX. PENAL CODE ANN. § 12.33(a) (Vernon 1993). Aggravated assault during which a deadly weapon is used or exhibited, the offense for which petitioner was indicted, is a second degree felony. TEX. PENAL CODE ANN. § 22.02 (a) & (b) (Vernon 1973). If it is shown at the trial for a second degree felony offense that a person has been convicted of a prior felony, he *shall* be punished for a first-degree felony. TEX. PENAL CODE ANN. § 12.42(b) (Vernon 1973). The punishment range for a first degree felony is 5 to 99 years or life. TEX. PENAL CODE. ANN. § 12.32(a)(Vernon 1979). If it is shown at a trial for any felony crime that the defendant has been finally convicted of two prior felonies, one occurring subsequent to the other, on conviction he *shall* be punished by imprisonment for s period between 25 to 99 years or life. TEX. PENAL CODE. ANN. § 12.42(d) (Vernon 1983). Because petitioner had been convicted of two prior felonies as alleged in the indictment, he would have been subject to a minimum sentence of twenty-five years had he gone to trial and been convicted. Instead, because the State agreed to strike one of the enhancement paragraphs, by pleading guilty petitioner was subject to the minimum sentence for a second-degree felony enhanced by one prior conviction, which is five years. The trial judge sentenced petitioner to fifteen years, a sentence on the low end of the possible sentence range and lower than the minimum sentence he would have received had he gone to trial and been convicted.

With regard to petitioner's contention that his plea was involuntary because he is innocent, petitioner signed a judicial confession, confirmed his guilty plea to the judge under oath, and confirmed that he understood the documents he signed confessing to the crime. The record does not support petitioner's contention that his plea was involuntary because he is innocent of the charge. Finally, regarding petitioner's contention that his plea was involuntary because his attorney never

11

explained that he was not entitled to discovery, petitioner has neither alleged nor shown how the availability or unavailability of discovery renders his guilty plea involuntary, given that he understood the charge against him, understood the consequences of a guilty plea, and voluntarily choose to plead guilty without being coerced to do so.  *See Frank v. Blackburn*, 646 F.2d at 882. Petitioner made a knowing and voluntary plea of guilty.  Accordingly, petitioner's claim entitles him to no habeas relief.

### IV.  COERCED CONFESSION

In his second ground for relief, petitioner asserts that his conviction was obtained by a coerced confession because he continually advised counsel that he was innocent of the charges from the time of her appointment up to the time he was "forced" to enter the guilty plea.  Petitioner further claims that his confession was coerced because his attorney advised him in June of 2003 that the minimum State's offer was a sentence of twenty-five years and that the State did not need to produce a weapon to prove his guilt but only the complainant's testimony.  Finally, petitioner claims that his confession was coerced because his attorney advised him that he would receive probation or a minimal sentence if he pled guilty as opposed to 25 to 99 years or life if he proceeded to a jury trial.

As noted earlier, the record does not support petitioner's contention that he was forced to plead guilty.  As for his claim that his plea was coerced because his attorney informed him about an offer from the State or that he could be convicted based on the complainant's testimony alone, these correct statements did not render his confession coerced.  Finally, petitioner again contends that his confession was coerced because his attorney advised him to plead guilty, but as noted earlier, counsel's representation of the sentence range petitioner would face if he proceeded to a jury trial was correct.  While petitioner did not receive probation, he did receive a minimal sentence of fifteen years

12

despite the number of felonies on his record and a potential life sentence.

At the state habeas level, the trial court concluded that this claim was without merit after finding that fully discussed all matters involving the guilty plea and fully explained the paperwork to petitioner and after finding that petitioner informed the trial court that he had no questions about his plea and understood the consequences. The state habeas court denied this ground on its merits based on the trial court's findings, and this decision is not contrary to federal law. Petitioner's request for relief on this claim should be denied.

## V. BRADY VIOLATION

In his third ground for relief, petitioner asserts that the State withheld evidence that the complainant was on probation and had absconded at the time of trial.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression of evidence favorable to the accused and material to either guilt or punishment by the State violates a defendant's due process rights under the federal constitution. *Brady* requires the prosecution to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985). This evidence is material if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict. *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

In the affidavit she provided at the state habeas level, petitioner's attorney avers that she was the one who discovered the complainant's felony probation and her status as an absconder in June of 2003, and that she gave the prosecutor this information. (S.H.Tr.:82). Counsel attached

13

documents from Navarro County, Texas, that reflected the complainant's arrest for injury to an elderly person in 1996 and revocation of her probation in 2000. (S.H.Tr.:83-89). The record from the punishment hearing also reflects that defense counsel questioned the complainant about this felony conviction. (R. 3:12-13, 20).

At the state habeas level, the trial court found that the State did not withhold favorable evidence from petitioner and that the complainant's record was introduced into evidence at the punishment hearing. The trial court concluded that the allegation was without merit. This claim was denied on its merits based upon these findings. Evidence of the complainant's prior felony conviction was known to the defense prior to trial and was used to impeach her during the punishment hearing. The state habeas court denied this claim on its merits, and this denial is not contrary to federal law. Petitioner is entitled to no relief on the basis of this claim.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because counsel 1) only consulted with him four times over a fourteen-month period, responded to only one of his letters and none of his attempted telephone calls, and failed to keep him informed about any developments in the case, such as offers made by the State; 2) failed to discuss with him any available defenses or his prior convictions; 3) failed to investigate petitioner's drug problems and that he had never been offered any treatment for it; 4) did not file a motion for the appointment of an investigator until three months after the alleged offense, did not conduct any personal investigation such as interview potential witnesses, did not properly prepare for trial, and never discussed trial strategies or defenses with petitioner; and 5) misled petitioner into thinking that he would receive probation by entering into an open plea without any type of agreement or

14

recommendation from the State.[2]

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

As noted earlier, state habeas trial court found defense counsel's affidavit to be true and correct. It stated that counsel spoke and met with petitioner numerous times, kept him informed of the ongoing investigation in the case, and was prepared to go to trial on the day that she obtained an agreement from the State to drop one of the enhancement paragraphs if petitioner made an open plea of guilty. (S.H.Tr.:81-82). The trial court also made a factual finding that defense counsel fully, effectively, and zealously represented petitioner. (S.H.Tr.:78). These findings are entitled to a presumption of correctness that petitioner has failed to rebut with clear and convincing evidence to the contrary. The record shows that defense counsel investigated and obtained the complainant's prior criminal history, cross-examined her during the punishment hearing about her criminal and drug

---

[2] The Government also contends that this claim is unexhausted in part. As with the involuntary plea claim, the Court proceeds to the merits. *See* 28 U.S.C. § 2254(b)(2).

use history, and called two witnesses on petitioner's behalf. Petitioner's claim that his attorney failed to conduct an adequate investigation or failed to prepare for trial is unsupported. He fails to state what further defenses he believes should have been raised and fails to explain how obtaining permission from the trial court to hire an investigator a full year prior to trial is ineffective assistance of counsel. (Tr.:28-30). Moreover, petitioner fails to explain why it was important for his attorney to discuss his prior convictions with him, as she was clearly aware of them at the punishment hearing and argued in her closing argument that his criminal history revealed that he was not actually a violent person. (R. 3:38-39). Significantly, petitioner has failed to establish that had his attorney had a greater level of communication with him to discuss other defenses, trial strategies and prior convictions with him to a higher degree, hired an investigator sooner, or conducted more investigation, there is a reasonable probability that he would not have pleaded guilty. The record shows that petitioner pled guilty because a plea gave him the opportunity to receive a lesser sentence than he would if he proceeded to a jury trial and was found guilty.

Petitioner further asserts that his attorney was ineffective for failing to investigate his drug problems. Petitioner does not show, however, how this would have caused him not to plead guilty to the crime. To the extent that he may be arguing that his drug problem should have been raised as a defense at trial, under Texas law, voluntary intoxication does not constitute a defense to the commission of a crime. *See* TEX. PENAL CODE ANN. § 8.04 (Vernon 1994). Moreover, at the punishment hearing, petitioner's nephew admitted he was drug dealer but testified that to his knowledge, petitioner was not a drug user. Any evidence of petitioner's alleged drug problems would have contradicted this testimony. Counsel was not ineffective for failing to investigate petitioner's drug problems.

16

Finally, petitioner asserts that his trial counsel was ineffective for misleading petitioner into believing that he would receive probation by entering into an open plea. As noted earlier, however, petitioner signed a plea agreement stating the range of punishment and he acknowledged during the plea hearing that he understood that he could receive deferred adjudication but could also receive any sentence within the applicable range. The record therefore does not support petitioner's assertion that he was "misled" into believing that he would receive probation.

The state court denied relief on petitioner's ineffective assistance of counsel ground on its merits. (S.H.Tr.:cover). This denial is not contrary to federal law, and petitioner's claims of ineffective assistance of counsel entitle him to no habeas relief.

## VII. STATE CONSIDERATION OF CLAIMS

Petitioner raised most of his claims in his state writ. The Court of Criminal Appeals denied the state writ on its merits, and thus petitioner's claims were adjudicated on the merits. The decision at the state level is consistent with, and involved no unreasonable application of, Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in his petition.

## VIII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 20th day of May, 2009.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE